BLADES *v.* GENESEE COUNTY DRAIN DISTRICT NO. 2.

DISSENTING OPINION.

DETHMERS and O'HARA, JJ.

1. DRAINS—SANITARY SEWER TRUNK LINE—FARMS—BENEFITS.

*Plaintiffs' lands, largely used for farming purposes and located within special assessment district created for construction of a sanitary sewer artery trunk line, to be connected with a revenue-bond financed sewage disposal plant, may not be said to be without benefit because of such construction, where laterals connecting with such trunk line to carry sewage from plaintiffs' properties could make available that which is not now in existence (CLS 1961, § 280.1 et seq., as amended).*

2. SAME—DETERMINATION OF BENEFITS—QUESTION OF FACT—DRAIN COMMISSIONER.

*The questions of whether or not a benefit to plaintiffs' properties, largely farms, located in special assessment district created for construction of sanitary sewer artery trunk line is one of fact, in the first instance, for determination by the drain commissioner, a determination with which courts will not make a concurring or a contrary determination, but merely determine the legal question of whether there is a lack of any reasonable basis or theory to support the commissioner's factual determination (CLS 1961, § 280.1 et seq., as amended).*

REFERENCES FOR POINTS IN HEADNOTES

[1, 8] 17A Am Jur, Drains and Sewers § 64 *et seq.*
48 Am Jur, Special or Local Assessments § 35.
[2] 48 Am Jur, Special or Local Assessments § 29.
17A Am Jur, Drains and Sewers § 77.
[3] 2 Am Jur 2d, Administrative Law § 610 *et seq.*
[4] 41 Am Jur, Pleading § 341.
[5] 17A Am Jur, Drains and Sewers § 76.
[6] 17A Am Jur, Drains and Sewers § 78.
[7] 16 Am Jur 2d, Constitutional Law § 569 *et seq.*
[9, 10, 11] 48 Am Jur, Special or Local Assessments § 21 *et seq.*

3. SAME—DETERMINATION OF BENEFITS—SUMMARY JUDGMENT.

*Summary judgment for defendant special assessment district, created for purpose of constructing a sanitary sewer artery trunk line, to be connected with a revenue-bond financed sewage disposal plant, held, proper in action to set aside the establishment of the district, where there was a reasonable theory of benefit to support the drain commissioner's finding thereof as a fact (CLS 1961, § 280.1 et seq., as amended; GCR 1963, 117).*

4. JUDGMENT—SUMMARY JUDGMENT.

*Summary judgment is permissible in an equitable type of action, where there is an absence of disputed facts shown to exist, even though the plaintiff is not, strictly speaking, entitled to judgment as a matter of law (GCR 1963, 117).*

OPINION OF THE COURT.

5. DRAINS—SPECIAL ASSESSMENT—BENEFITS—DUE PROCESS—QUESTION OF FACT.

The denial of an opportunity to plaintiff farmers to prove in court that there is a total absence of specially assessable benefits from the construction of a sanitary sewer artery trunk line, to be connected with a revenue-bond financed sewage disposal plant is a denial of constitutionally guaranteed due process, the controlling question being one of fact (US Const, Am 14; GCR 1963, 117).

6. SAME—COMMISSIONER'S DETERMINATION OF BENEFITS—EQUITY.

A drain commissioner's determination of special benefit to lands within special assessment district is not beyond the controlling hand of equity (CLS 1961, § 280.1 *et seq.*, as amended).

7. CONSTITUTIONAL LAW—DUE PROCESS—COURTS.

A true day in court is part and parcel of constitutionally guaranteed due process (US Const, Am 14).

8. DRAINS—SPECIAL ASSESSMENTS.

The principle underlying special assessments to meet the cost of public improvements, such as a drain or sewer, is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement (CLS 1961, § 280.1 *et seq.*, as amended).

9. Taxation—Public Improvement—Special Assessment—Substantial Excess of Special Benefits.

> The exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation.

10. Same—Public Improvement—Special Assessment—Substantial Excess of Special Benefit—Equity.

> Excess of cost over special benefit to property sought to be specially assessed for a public improvement, unless it be of a material character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment.

11. Same—Public Improvement—Special Assessment—Benefits.

> Benefits to property from a public improvement, to sustain a special assessment must be actual, physical, material, not merely speculative or conjectural, must be substantial, certain, and capable of being realized within a reasonable time, and not dependent upon contingencies and future action of public authorities.

Appeal from Genesee; McGregor (Louis D.), J. Submitted March 3, 1965. (Calendar No. 63, Docket No. 50,540.) Decided June 7, 1965.

Complaint by Ralph Blades and others of a class who are similarly affected against Genesee County Drain District No. 2, a body corporate, Anthony J. Ragnone, drain commissioner and agent for Genesee County Drain District No. 2, Bernard O'Brien, former drain commissioner, and Genesee County Board of Supervisors to declare the special assessment district and assessment rolls invalid. Judgment for defendants. Plaintiffs appeal. Reversed.

*Cline & George* and *Thomas & Delaney,* for plaintiffs.

*McTaggart & Lattie* and *Dickinson, Wright, McKean & Cudlip* (*Charles R. Moon,* of counsel) and

*John G. David,* Genesee County Corporation Counsel, for defendants.

Dethmers, J. (*dissenting*). Plaintiffs filed their complaint in the Genesee county circuit court, asking that the establishment of a special assessment district and assessment roll be set aside. They appeal from entry of summary judgment* for defendants.

The Genesee county drain district No. 2 covers most of the northwesterly quarter of Genesee county. Plaintiffs are members of a class of upwards of 375 landowners in that district, mostly farmers, with large parcels of land. Proceedings for creation of the district were instituted in June, 1959, under the drain code of 1956, PA 1956, No 40 (CLS 1961, § 280.1 *et seq.* as amended [Stat Ann 1960 Rev § 11.1001 *et seq.*]), and bids were taken for a sanitary sewer artery trunk line as a sole and separate construction project. At the same time, the Genesee county board of supervisors adopted a resolution or ordinance under PA 1939, No 342 (CLS 1961, § 46.171 *et seq.* [Stat Ann 1958 Rev and Stat Ann 1963 Cum Supp § 5.2767(1) *et seq.*]), providing for a revenue bond issue to finance construction of a sewage disposal plant. The mentioned trunk line is intended to be connected with that plant and to extend out east and south therefrom for several miles in a manner designed to make it available to laterals sufficient to serve the entire drainage district. Operating costs of the plant and retirement of the revenue bonds are to be collected from connection charges and users of the system who hook up with the trunk line or laterals to be built and leading thereto. Contracts, under PA 1939, No 342, *supra,* with two cities and five townships comprising the drainage district are contemplated, under which any of those governmen-

---

* See GCR 1963, 117.—Reporter.

tal units which so desires will make charges to any of its residents connected with the system, collect usage fees from them and remit for operation costs of the plant and retirement of the bonds. All of this would necessitate construction of laterals through those units from the property of users to the trunk line. No governmental unit is obligated to do so.

Plaintiffs, acting for themselves and others in the class similarly situated, some of them owning land located several miles from the trunk line, say that no benefit could or would accrue to their properties from the construction and laying of the trunk line. This is the basis of their contention that inclusion of their lands within the special assessment district and on the assessment roll is invalid.

Plaintiffs say that inclusion of their properties in the district on the theory that they have been or will be benefited amounts to a fraud in law. Their chief reliance is on *Panfil* v. *City of Detroit,* 246 Mich 149, and *Fluckey* v. *City of Plymouth,* 358 Mich 447. In *Panfil* this Court held, *inter alia,* that under a charter provision permitting assessment of costs of paving a street against property abutting the street, it was a fraud in law for the city to so assess plaintiff's property which abutted property ostensibly condemned and taken by the city for street widening purposes when the portion thereof immediately adjoining plaintiff's lot was not needed or used for street purposes but, apparently, was taken only for the purpose of making plaintiff's lot abut the street and subject to the special paving tax. In *Fluckey* this Court held it a fraud in law to impose a special assessment on residential properties along a two-lane, 22-foot, black-topped street to pay for widening the pavement to a 48-foot, reinforced concrete pavement to accommodate truck and other industrial

traffic, which would come, in part, from a new plant which a company had been induced to locate nearby. In effect, in *Fluckey,* this Court held that as a matter of law there was no benefit to those residential properties. This Court stated that conversion of a peaceful country road to a four-lane thoroughfare to accommodate and attract new heavy truck traffic, so far from benefiting the residential properties, actually would detract from their values and that the special assessment, imposed on a theory of benefit thereto, was, therefore, invalid.

The *Panfil* and *Fluckey* situations do not obtain in the instant case. It is true that here a sewer trunk line is to be installed to which plaintiffs will not have immediate access unless connecting laterals are constructed. However, the construction of the trunk line will make available for the benefit of plaintiffs' properties and others that which is not now in existence, namely, a line to which such laterals may be connected to carry sewage from their properties. Without its construction such benefit would not be available to these properties. To deny that this constitutes a benefit to plaintiffs' properties differs only in degree from saying that a sewer in the street running along plaintiffs' properties would not benefit them because plaintiffs had not elected to make the necessary connections thereto. To those who might urge that, traditionally, on the typical American farm scene there is no need for indoor plumbing or a modern sewer system, defendants point out that the very accessibility of the indicated service, created by the trunk line, would make lands theretofore usable only as farm lands more desirable for development into platted, residential areas and, thus, create an enhanced value of the lands. We cannot say as a matter of law that this is not so.

That brings us to a consideration of whether we treat here with a question of fact or a question of law, inasmuch as a summary judgment is involved. We proceed with the assumption that the question of benefit to plaintiffs' properties is one of fact, in the first instance, for determination by the drain commissioner. If so, may the court make a determination as a matter of law warranting the entry of a summary judgment accordingly?

In *Cummings* v. *Garner,* 213 Mich 408, this Court quoted with approval from the trial court's opinion in that case as follows (p 420):

" 'The boundaries of the district specially benefited, the per cent of benefit derived by the lands therein, the township or townships benefited and the per cent of such benefit, and the per cent of benefit derived by the county at large, are all matters to be determined first by the board of road commissioners and then all are subject to review by an impartial tribunal appointed by the probate court for that special purpose, to which hearing on review all parties are given due and timely notice and provided full and adequate opportunity to be heard. It has been held time and again that these questions are purely legislative in character and must be left to the agencies provided by legislative authority, and so long as a free and fair opportunity is given to be heard no one is in position to complain and no question of judicial cognizance is raised. *Troost* v. *Fellows,* 169 Mich 66, 70; *Township of Clinton* v. *Teachout,* 150 Mich 124.' "

In *Marks* v. *City of Detroit,* 246 Mich 517, 523, this Court quoted with approval from *Brown* v. *City of Grand Rapids,* 83 Mich 101, 109, the following:

" 'It is not for this Court to set its judgment up in opposition to that of the board of commissioners and the council, and to say that this parcel of land or that is assessed too much or too little. The assess-

ments were to be made according to benefits to each
parcel of property, and there is nothing in the rec-
ord showing that the commissioners did not assess
the complainant's lands in accordance with their
best judgments.' "

In *Fluckey* this Court said (p 454):

"The assessors, not the court, weigh the benefits,
if, in truth, there are benefits to be weighed."

In its opinion granting summary judgment the
trial court in the instant case said:

"It is apparent that the courts in Michigan will
limit the scope of their review of drain proceedings
very drastically. The courts will not substitute their
discretion and judgment for that of the drain com-
missioner in (1) deciding the type of drain improve-
ment to be constructed, (2) the location of such im-
provement, (3) the area which will be served or
benefited thereby, (4) the engineers, contractors and
consultants to be employed and (5) the many other
details involved in locating, establishing and con-
structing a drain. The courts will also not deter-
mine the amounts of or make the apportionments of
benefits and they will not review the details of bond
financing or the wisdom of the pledging of full faith
and credit by the county or by any other public
corporation involved. All decisions of this nature,
made by the drain commissioner, are conclusive and
are not subject to judicial review of any kind."

We approve the statement of the trial court. It
follows that while the determination of benefits pre-
sented the commissioner with a question of fact,
after he has made that determination it is not for
the court to substitute its judgment and to make
either a concurring or contrary determination of
facts, but, only, to determine the legal question of
whether there is a lack of any reasonable basis or

theory to support the commissioner's factual determination of benefit. No dispute of facts is presented by the pleadings in that respect. Plaintiffs' complaint alleges no facts which, if taken as true, require a holding that, as a matter of law, no benefits will be conferred, as this Court did in *Fluckey.* In *City of Grand Rapids* v. *Grand Trunk Railway System,* 214 Mich 1, this Court said (pp 5, 11):

"It is a legislative policy of this State that railroad properties shall be subject to tax for local improvements. But if the track, roadbed, or right-of-way of a railroad is not susceptible of benefit from a local improvement a taxing of such property for such improvement would be wanting in the due process of law required by the Constitution. * * *

"The weight of authority is, and we so hold, that the court may not say, as a matter of law, that the track, roadbed, or right-of-way of a railroad may not be benefited or susceptible of benefit by a local improvement. No bad faith is charged and to what extent the property included in the assessment district was benefited and whether benefited or not were questions to be determined in the special proceedings. We cannot review the assessment."

The question of benefit to plaintiffs' properties, if viewed as a question of fact, was for determination by the commissioner. In the absence of any charge of bad faith or wilful fraud the function of the court was solely to determine the legal question of whether there was a lack of any reasonable theory to support the commissioner's finding of benefit. Only upon such determination could the court reverse the commissioner's finding of benefit and hold as a matter of law that there was no benefit. On this question of law the court properly found for defendants, namely, that there was a reasonable theory of benefit to support the commissioner's finding thereof as a fact. That being decided as a mat-

ter of law, the summary judgment for defendants properly followed. As applied to equitable actions we find in 1 Honigman and Hawkins, Michigan Court Rules Annotated, p 360, and approve the following:

"Summary judgment should also be permissible in an equitable type of action, even though the plaintiff is not, strictly speaking, 'entitled to judgment as a matter of law' but only as a matter of equitable discretion. There is no good reason why the absence of disputed facts cannot be shown by the summary judgment procedure and the requested relief be given or denied according to equitable principles, just as would be the case after the facts were established by trial. See 3 Barron & Holtzoff, Federal Practice and Procedure, § 1232.3. The phrase 'according to law' means according to the rules of decision—whether statutory, common law, or equitable—by which the courts dispose of cases when factual issues have been resolved. It was not intended to limit summary judgment to what were historically legal actions as distinguished from equitable."

The judgment should be affirmed. Costs to defendants.

O'Hara, J., concurred with Dethmers, J.

Black, J. Whatever view one may take of the majority and minority opinions of *Crampton* v. *City of Royal Oak*, 362 Mich 503, one contrasting fact stands forth from that like equity case. There the plaintiffs received, as was due, a full testimonial hearing of their claim that the proposed local improvement would not specially or otherwise benefit properties owned by them and included in the special assessment district. Here that fundament of due process was denied to similarly appealing plaintiffs. They were thrown out of court, summarily

under GCR 1963, 117, without so much as a support-
ing affidavit attesting facts distinguished from ver-
ification of the public records on which the defendant
drain commissioner relies.   Such plaintiffs are here,
requesting reversal for trial.   That they should have.

This complaint for adjudicatory and injunctive
relief reached, in circuit, the very nadir of curtly
peremptory justice.   Denied all semblance of a trial
of their seemingly just factual issue; that is, that
their agricultural properties will receive no benefit
(no benefit at all that is) from this proposed drain
and sewage disposal project, they were told that
the question of partial presence or total absence of
benefit—to such properties—was exclusively for the
county drain commissioner.   Then, as declaredly
controlling, they were treated to that part of the trial
court's opinion which Justice DETHMERS has quoted.
Although my Brother's opinion does not disclose the
fact, such quoted part was based exclusively on our
wholly inapplicable decision of *In re Macomb Drain
Commissioner,* 369 Mich 641.

I rise to observe that both courts in the cited
*Macomb Case* provided complete judicial review, by
*certiorari* and appeal as sought, of the therein as-
sailed special drain assessments.   Questions of law
only were advanced for judicial consideration by
the petitioner in *certiorari.*   Too, that petitioner
did not (p 652) "deny that some benefit, concededly
substantial, will accrue to it from each project."
Here the plaintiffs want only an opportunity to
prove, if they can, a total absence of specially as-
sessable benefit to them or to their respective parcels.
To deny them such opportunity is no more nor less
than a denial of constitutionally guaranteed due
process.[1]

---

[1] "If the tax imposed clearly results in such a flagrant and pal-
pable inequality between the burden imposed and the benefit received
that it amounts to an arbitrary taking of property without compensa-

Enough has been written recently about the vaulting growth of abuses Court Rule 117 started a little over two years ago. On the face of this record, considering it solely in array with the technical questions that are raised in defendants' motion for summary judgment, plaintiffs have a right to say that nothing has been given or offered in return for that which the assessing authorities would exact. Defendants' sole answer, advanced below and here, is that the statutory proceedings thus far taken by the drain commissioner are conclusive; that plaintiffs' sole remedy of review was by *certiorari*, and that the time for pursuit of that remedy has long since passed. So a drain commissioner's determination of special benefit, no matter how fanciful, speculative, whimsical, capricious, arbitrary, or downright outrageous it may be, is beyond the controlling hand of equity. I would let that chestnut burn. It was charred beyond recognition from the very beginning of equity's growth.

Constitutional questions automatically arise when a quick judgment is entered on fast motion, before trial, in a case which from its very nature presents a controlling question or questions of fact. A true day in court is part and parcel of constitutionally guaranteed due process. And when a landowner seeks relief in equity from an assessment of his property for special benefit, alleging—as these plaintiffs have fairly and adequately done—no benefit in actual fact, he thereby raises a question of taking of his property, under the guise of taxation, for public use without compensation.

---

tion, it is said to violate the due process guaranty under the Fourteenth Amendment. All of the cases which have affirmed the broad powers of taxation have recognized these limitations, *i.e.*, see *Dane* v. *Jackson*, 256 US 589 (41 S Ct 566, 65 L ed 1107); *Henderson Bridge Co.* v. *Henderson City*, 173 US 592, 614 (19 S Ct 553, 43 L ed 823); *Houck* v. *Little River Drainage District*, 239 US 254 (36 S Ct 58, 60 L ed 266), 1 Cooley, Taxation (4th ed), § 144." *Morton Salt Co.* v. *City of South Hutchinson* (CCA 10), 159 F2d 897, 901,

I go to early principles of the law of taxation and the right of special assessment for special benefit; principles which Justice COOLEY announced first with widespread acceptance throughout the country.

In *Norwood* v. *Baker,* 172 US 269 (19 S Ct 187, 43 L ed 443), which was another like equity case, the Supreme Court observed in a preliminary way that there is a point (p 278) "beyond which the legislative department, even when exerting the power of taxation, may not go consistently with the citizen's right of property," and that "the principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement." Then the Court, relying principally upon Justice COOLEY's work on Taxation, laid down this rule (p 279):

"In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess,* a taking, under the guise of taxation, of private property for public use without compensation. We say 'substantial excess,' because exact equality of taxation is not always attainable, and for that reason the excess of cost over special benefits, unless it be of a material character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment." (Emphasis by Justice Harlan.)

COOLEY's text, cited in *Morton Salt Co.* v. *City of South Hutchinson, supra* at 902, accents the need for trial rather than summary disposition of this equity case. *Morton* reads in part as follows:

"Whether the exaction is in the form of a special assessment for a special improvement, or a general

tax for the general welfare, the constitutional test is always whether anything is given or offered for that which is taken. Indeed, the underlying purpose for the creation of special taxing districts is to attain a constitutional balance in relationship to benefits conferred for burdens imposed. 1 Cooley, Taxation (4th ed), § 320."

For present purposes it is sufficient to say that the presented question, whether plaintiffs' lands will receive actual distinguished from speculative benefit from the proposed project, is one of fact (*Briscoe v. District of Columbia,* 221 US 547, 551 [31 S Ct 679, 55 L ed 848]; 48 Am Jur, Special or Local Assessments, § 29, p 588). That consideration, viewed with the general rule,[2] calls for reversal.

I note in conclusion that every Michigan decision cited and quoted by my Brother DETHMERS came to submission here on a full meritorious hearing below; not upon a granted or denied motion for summary judgment.

The circuit court's judgment of dismissal should be reversed with instruction to order denial of defendants' motion for summary judgment. Plaintiffs should have costs of both courts.

T. M. KAVANAGH, C. J., and SOURIS and ADAMS, JJ., concurred with BLACK, J.

KELLY and SMITH, JJ., did not sit.

[2] "§ 28.  *Character of Benefit as Certain, Speculative, Pecuniary, et cetera.*
"It has been ruled that benefit to property from a public improvement to sustain a special or local assessment must be actual, physical, and material, and not merely speculative or conjectural. In order to justify the assessment, the benefits must be substantial, certain, and capable of being realized within a reasonable time. Benefits arising from improvements which depend upon contingencies and future action of public authorities cannot be considered in estimating the assessment, although they may form part of a general plan for public improvement." (48 Am Jur, Special or Local Assessments, pp 587, 588.)