CLOVERLANES BOWL, INC v GORDON

1. Judgment—Leasehold Rights—Res Judicata—Material Change in Circumstances.

The doctrine of res judicata will not operate to bar a subsequent relitigation of issues where a material change in circumstances affecting those issues occurs after a judgment has been rendered; where a zoning ordinance had been amended and a condemnation suit started after a judgment dispositive of leasehold rights prior to such new developments there was such a material change in circumstances making res judicata inapplicable.

2. Judgment—Summary Judgment—Contracts—Intent of Parties.

The entry of a summary judgment is never proper where there are unresolved material issues of fact, where the parties' motive or intent is at issue or where the evidence presented is inadequate or incomplete; therefore, it was error to grant summary judgment in a case litigating rights under a lease containing a contingent easement clause referring to the laws, rules, ordinances and regulations of any governmental authority having jurisdiction over the premises where the issue was the effect on the lease of a subsequent zoning ordinance and a determination of the parties' intent was required.

3. Landlord and Tenant—Leases—Ambiguity—Rules of Construction.

A lease susceptible to more than one construction will be construed most strongly against the party that prepared the lease.

Appeal from Wayne, Neal Fitzgerald, J. Submitted Division 1 February 6, 1973, at Detroit. (Docket No. 13573.) Decided April 25, 1973.

Cloverlane Bowl, Inc., filed a bill in chancery

References for Points in Headnotes

[1] 46 Am Jur 2d, Judgments §§ 443, 444.
[2] 50 Am Jur 2d, Landlord and Tenant §§ 1240–1242.
[3] 49 Am Jur 2d, Landlord and Tenant §§ 142–144.

against Harold H. Gordon, Marion T. Gordon, Louis P. Begin, Gita M. Begin, and Gordon-Begin Real Estate, Inc., for injunctive relief protecting rights in a property under a lease. Judgment for plaintiff. Defendants petitioned for declaratory relief to discharge plaintiff's interest in the property. Plaintiff counterclaimed raising new questions with respect to rights in the property. Accelerated judgment for defendants and summary judgment dismissing plaintiff's counterclaim. Plaintiff appeals. Reversed and remanded.

*Chris M. Youngjohn,* for plaintiff.

*Ivan E. Barris,* for defendants.

Before: T. M. BURNS, P. J., and BASHARA and ADAMS,* JJ.

T. M. BURNS, P. J. Plaintiff appeals from an accelerated judgment entered in favor of the defendants, a summary judgment dismissing its counterclaim, and the vacation of an injunction extinguishing its rights in a parcel of land.

The facts of the instant case are for the most part uncontested. In 1959 Great Lakes Bowling Corporation entered into a 20-year lease agreement with the defendants. The lease included six successive five-year options for renewal. Subsequently Great Lakes Bowling assigned the lease to the plaintiff.

The lease provided that the defendants as lessors were at their own expense up to $540,000:

"[T]o construct a one-story building upon the leased premises [located on Schoolcraft Road, Livonia] with an

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

area of 60,000 square feet sufficient to house sixty-four (64) bowling alley beds, a restaurant and other necessary facilities, according to plans and specifications to be approved by Tenant. * * * The building shall be suitable for the installation and use of 64 bowling alleys, a cocktail lounge and restaurant and other required and necessary facilities for the operation of the same and for the compliance with the applicable laws and building requirements of the governmental authorities. The remainder of the leased premises shall be constructed as a parking lot and shall have proper drainage facilities and shall be paved with black-top. * * * The Landlord shall fully decorate the interior of the building and cover the floors except that portion occupied by [the] bowling alley beds. Landlord shall furnish air-conditioning for the building to be erected in accordance with the plans and specifications aforesaid."

Plaintiff, as lessee, agreed to pay a monthly rental of $5333.33 and to "furnish bowling alley equipment and bar and restaurant fixtures to be connected to the outlets supplied by [the] landlord [defendants]."

The lease also provided for cancellation by the tenant [plaintiff] in the event of public condemnation of the leased premises. The relevant portions of the lease in this regard read:

"40. a. If the whole or any part of the premises hereby leased shall be taken by any public authority under the power of eminent domain, then the term of this lease shall cease on the part so taken from the day the possession of that part shall be required for any public purpose and the rent shall be paid up to that date, and from that date the Tenant shall have the right either to cancel this lease and declare the same null and void, subject to the provisions hereinafter contained, or to continue in the possession of the remainder of the same under the terms herein provided, except that the rent shall be reduced in proportion according to the formula hereinafter set forth. All damages awarded for such taking shall belong to and be

the property of the Landlord whether such damages shall be awarded as compensation for diminution in value to the leasehold or to the fee of the premises herein leased; provided, however, that the Landlord shall not be entitled to any portion of the award made to the Tenant for loss of business and removal and damages to personal property and fixtures of Tenant.

"b. The Tenant shall not have the right to avail itself of cancellation of this lease under the preceding paragraph if thirty-two (32) bowling alleys constructed upon the leased premises shall remain intact, if there is adequate room available for a restaurant, and if there is adequate parking space remaining in the parking lot consisting of not less than six (6) car spaces for each remaining bowling alley bed, computed on the basis of car spaces eight (8) feet by twenty (20) feet (8' × 20') and adequate aisle approaches so that each customer may self-park his automobile and lock the same and not interfere with the parking of other motor vehicles.

"c. * * *

"d. In the event the portion of the premises not occupied by the building shall be taken, $625.00 per month shall be deemed the rental for the portion of the leased premises not occupied by the building. In such event the rental for leased premises not occupied by building shall be reduced by that proportion as the area of such portion of the leased premises taken bears to the entire area not occupied by the building.

"e. In the event of a partial condemnation of the premises without cancellation of the lease, the Landlord agrees that the award for damages rendered in favor of the Landlord on such condemnation proceedings 'shall be used first to restore the leased premises to a good and useable condition. In the event the award is insufficient to do so, the Landlord agrees to restore the leased premises to a good and useable condition at his own cost and expense. In such event, the additional cost incurred by the Landlord over and above the award for damages rendered in favor of the Landlord upon such condemnation proceedings shall be determined. Ten per cent (10%) of the amount so determined shall be added to the annual rental under this lease after the taking of portions of the premises under eminent domain and

shall be payable on a monthly basis together with the other rent due under this lease."

Finally the lease provided for the use of an adjacent parcel of land for automobile parking when:

"55. In the event the parking lot to be constructed upon the leased premises shall be inadequate to provide sufficient parking for sixty-four (64) bowling alleys and the restaurant, under the laws, rules, ordinances and regulations of any governmental authority having jurisdiction over the premises, Landlord agrees to add to the leased premises the following described land situated in the City of Livonia, County of Wayne, State of Michigan, to-wit:
[Land description omitted]
"It is understood that the rental provided for in this lease shall cover this additional property and no additional rent shall be charged therefor."

Although defendants constructed a bowling alley, snack bar and cocktail lounge, they did not build the proposed restaurant since the cost would exceed the $540,000 figure specified in the lease. In 1962, plaintiff learned of defendants' intention to erect a motel on the adjacent land described in paragraph 55 above, and sought an injunction to prevent such a project. Plaintiff expressed its own intent to build the contemplated restaurant and claimed that such construction would require additional vehicle parking spaces within the meaning of paragraph 55 and that by erecting a motel on this adjacent parcel, defendants would effectively deprive plaintiff of its leasehold interest in the adjacent land. Plaintiff further alleged that the local zoning ordinance would require the additional parking space mentioned in paragraph 55.

After a hearing was held on plaintiff's petition

the chancellor in an opinion from the bench on December 10, 1962, ruled:

"Therefore, in view of the fact that I do see like I do, I find that the plaintiff has a right to the use of the disputed property [described in paragraph 55], provided it has met the requirement of proceeding with its building at least by January 1, 1966. [Later changed to June 1, 1966 at plaintiff's request.] I also find, as I have said, as a matter of fact that the parking is not adequate on the property that plaintiff has. I believe that is the test set up by the contract. I do not think it will meet the requirements of Livonia; I do not think that it would be permitted; and, therefore, I feel that it is necessary that the plaintiff have that extra piece of property as provided by the contract."

Plaintiff, however, never built the restaurant.

In the summer of 1970, the Department of State Highways commenced condemnation proceedings against the leased premises seeking to take a 15-feet wide strip along the street. On September 14, 1970, due to plaintiff's failure to construct the restaurant, defendants filed a petition with the chancellor for declaratory relief to discharge plaintiff's interest in the adjacent parcel.

Plaintiff responded with an answer and counterclaim alleging adverse economic conditions as an excuse for its failure to construct the restaurant and claimed that under the terms of the lease the condemnation suit and more rigid zoning requirements raised new questions with respect to its rights to the adjacent land.

Defendants countered by filing joint motions for an accelerated judgment and summary judgment. GCR 1963, 116.1(2) (5), GCR 117.2(2) (3) respectively.

At the conclusion of the hearing on the petition, motions, and counterclaim, the chancellor found

that inasmuch as (1) the plaintiff had failed to commence the construction of the restaurant in accordance with the court's earlier order, (2) the lease under paragraph 40e provided for cancellation in the event of condemnation, and (3) the zoning ordinance requiring larger parking spaces could not be applied retroactively, the plaintiff did not require any additional parking space and consequently had "no interest whatsoever" in the adjacent property. Accordingly, the chancellor granted the defendants' motion for an accelerated judgment on the ground that plaintiff's counterclaim was barred by a prior judgment, GCR 1963, 116.1(5), and entered a summary judgment dismissing plaintiff's counterclaim for the reason it failed to state a claim upon which relief could be granted, GCR 117.2(1), and vacated the prior injunction thereby terminating plaintiff's rights in the adjacent property. Plaintiff appeals.

I

First we turn to the question of whether the trial court erred by entering an accelerated judgment in favor of the defendants on the ground that under the concept of res judicata plaintiff's counterclaim was barred by its prior suit for injunctive relief.

It is fundamental that where a material change in circumstances occurs after a judgment has been rendered, the doctrine of res judicata will not operate to bar a subsequent relitigation of issues affected by the altered conditions. See generally 6 Callaghan's Michigan Pleading & Practice (2d ed), § 42.110, pp 555–556.

Here plaintiff by way of a counterclaim attempted to establish its leasehold rights to the adjacent property on the basis of an amended

zoning ordinance and condemnation proceedings which both came into existence after the first judgment was rendered. In ruling adversely on the counterclaim, the trial court was of the opinion that the first judgment was dispositive of all of plaintiff's rights in the adjacent parcel. This was error.

An examination of the record discloses that the first judgment determined the plaintiff's rights in the adjacent parcel only insofar as they arose from the proposed construction of a restaurant on the leased premises and the consequent need for additional parking space. However, given the fact that the amended zoning ordinance and condemnation suit sprang into being after the first judgment was rendered, it follows that these two material changes affecting the plaintiff's rights in the disputed parcel could not and in fact were not resolved by the first judgment. Therefore although the first judgment was res judicata of plaintiff's rights to the adjacent land arising from the construction of the restaurant, it was not res judicata of plaintiff's rights to the parcel stemming from the amended zoning ordinance and condemnation suit. Accordingly, the trial court erred by dismissing plaintiff's counterclaim on the basis of res judicata.

II

The next question to confront us is whether the trial court erred by granting defendants' motion for summary judgment on the ground that plaintiff failed to state a claim upon which relief would be granted and by declaring that plaintiff had no right whatsoever in the adjacent property.

Where, as here, a case is equitable in character, the chancellor may nonetheless entertain a motion

for summary judgment. *Blades v Genesee County Drain Dist No 2,* 375 Mich 683 (1965); *International Chemical Workers Union Local 179, AFL-CIO v Swenor,* 368 Mich 658 (1962). However, the entry of a summary judgment is never proper when there are unresolved material issues of fact, the parties' motive or intent is at issue or where the evidence presented to the chancellor is inadequate or incomplete. *Blades, supra; International Chemical Workers, supra; Rogowski v Detroit,* 374 Mich 408 (1965); *Renfroe v Higgins Rack Coating & Manufacturing Co, Inc,* 17 Mich App 259 (1969); *Durant v Stahlin,* 375 Mich 628 (1965); *Reinhardt v Bennett,* 45 Mich App 18 (1973).

In the case at bar the parties sought to determine their respective rights in a parcel of property adjacent to the premises leased to the plaintiff. The lease contract created a contingent easement in the disputed parcel in favor of the plaintiff for parking space in the event the parking space on the leased property proved inadequate "for sixty-four (64) bowling alleys and the restaurant under the laws, rules, ordinances, and regulations of any governmental authority having jurisdiction over the premises". See paragraph 55, supra. Such an inadequacy could arise as was evidently foreseen by the parties if (1) plaintiff constructed a restaurant requiring additional parking, (2) the appropriate governmental body increased parking requirements, or if as it appears to have occurred (3) the area of the leased premises was diminished through condemnation.

The first contingency was eliminated when plaintiff failed to build the restaurant in accordance with the trial court's earlier injunctive order.

The trial court dispensed with the second contingency by opining that more restrictive zoning

requirements could not be applied to the plaintiff retroactively. However, this assumption requires an interpretation of paragraph 55 which is not apparent from the face of the lease. The lease itself makes no such qualifications. Had the parties intended reference only to zoning ordinance as they existed on the date of execution·of the lease as the trial court opinion implies, such a provision could have been inserted, or plaintiff could have been given parking rights on the adjacent property or paragraph 55 could have been eliminated entirely. Although it is plain the parties' intent was in question, the trial court summarily determined their intent without.having permitted the introduction of evidence or other factual data to support its. conclusion. Such a summary disposition was erroneous. *Durant v Stahlin, supra.*

Finally, the trial court dispensed with the third contingency by ruling that in the event of partial condemnation, plaintiff's sole remedy was cancellation under paragraph 40. A reading of the lease belies this conclusion.

Paragraph 40e provides in relevent part:

"e. In the event of a partial condemnation of the premises without cancellation of the lease, the Landlord agrees that the award for damages rendered in favor of the Landlord on such condemnation proceedings shall be used first to restore the leased premises to a good and useable condition. In the event the award is insufficient to do so, the Landlord agrees to restore the leased premises to a good and useable condition at his own cost and expense."

Thus had the parties' intention been fully explored below, paragraph 40e read in conjunction with paragraph 55 could well support the plaintiff's position that defendants are under an obligation to restore the premises to good and useable condition

after condemnation by affording plaintiff additional parking space on the adjacent property. However again the parties' intent was at issue and again the trial court erroneously determined that intent by summary means.

The primary difficulty with this case stems from the inadequate record developed below. For example, it is axiomatic that where, as here, a lease is susceptible to more than one construction, it will be construed most strongly against the party that prepared the lease. *Wolverine Upholstery Co v Ammerman,* 1 Mich App 235 (1965). However, the record in the case at bar does not disclose which of the parties were responsible for the preparation of the lease. Therefore even though this case is equitable in character and subject to *de novo* review, we are unable to apply even the most elemental guidelines for its resolution.

In view of the inadequate record presented regarding the parties' intent and the identity of the party who drew the lease, the trial court was in no better position than this Court to formulate a judgment relative to the parties' rights in the adjacent parcel and erred by entering the summary judgment on the record in its present state. *Renfroe v Higgins Rack Coating & Manufacturing Co, Inc, supra.*

For the reasons delineated above, the accelerated judgment and summary judgment entered in favor of the defendants are reversed and the case is remanded back to the trial court for an evidentiary hearing to ascertain the intent of the parties under paragraphs 40 and 55 of the lease and to determine the identity of the party or parties who prepared the lease.

Reversed and remanded for proceedings consistent with this opinion.

All concurred.