Thomas H. Fisher, Appellant, v. Homer P. Hargrave et al., Copartners Trading as Merrill Lynch, Pierce, Fenner and Beane, Appellees.

Gen. No. 42,425.

Opinion filed April 20, 1943.   Rehearing denied May 4, 1943.

NORMAN CRAWFORD, of Chicago, for appellant.

LEVINSON, BECKER, PEEBLES & SWIREN, of Chicago, for certain appellee; DON M. PEEBLES and JOSEPH P. ANTONOW, both of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

In December 1940, and January 1941, plaintiff had certain commodity transactions with Fuller, Rodney & Co., brokers, resulting in losses for which he sought an accounting from the copartnership of Merrill Lynch, Pierce, Fenner & Beane, successors in interest of Merrill Lynch, E. A. Pierce & Cassatt, who took over some of the accounts of Fuller, Rodney & Co. upon their dissolution at the close of business April 30, 1941. Service of summons was had on Homer P. Hargrave, one of the defendant copartners, who resided in Cook county. He answered the complaint and made a motion for summary judgment, supported by his own affidavit and that of Byron G. Webster, who had been a partner of Fuller, Rodney & Co. Plaintiff moved to strike Hargrave's motion and affidavits for summary judgment, as well as his appearance and answer, and for a default judgment against all the defendants. The court denied his motions, and upon consideration of the affidavits presented by the respective parties, granted Hargrave's motion and entered judgment in his favor for costs, from which plaintiff has taken an appeal.

Plaintiff's suit is predicated on the theory that since he paid $6,500 to Fuller, Rodney & Co., as his brokers, in certain commodity transactions for which no accounting had been made, he is entitled to secure such accounting for moneys alleged to be due him, not only from Fuller, Rodney & Co., with whom the transactions were admittedly and exclusively had, but from any other firm or partnership which "succeeded" to their business or "has merged or consolidated therewith." He contends that on a motion for summary judgment

he is entitled to the disclosure of all the evidentiary facts showing the relationship between the two firms, many of which were within the exclusive control of defendants and could not be ascertained until trial or until discovery is made; that the court denied him the discovery of documents and matters relevant to the succession in interest between the two firms, to which he was entitled; that the affidavits of the parties are squarely in conflict with each other, and required proof before the chancellor could determine whether defendants or their predecessors in interest had rendered themselves liable for handling or taking over some of Fuller, Rodney & Co.'s customer accounts; and that the conflicting affidavits, without discovery, could not be made the basis for a final decree upon motion for summary judgment in favor of defendant.

The question presented is whether the competent evidence contained in the affidavits supports the court's conclusion that defendants and their predecessors in interest did not assume the liabilities of Fuller, Rodney & Co., it being conceded that all plaintiff's brokerage transactions were had with the latter firm before their dissolution and undenied of record that plaintiff's account was not one of those which were taken over by defendants or their predecessors. The affidavits are too voluminous to be set forth *verbatim* within the reasonable confines of an opinion, but the salient allegations of facts which would be admissible in a trial may be summarized as follows:

Hargrave's affidavit alleges that he is and was a partner of Merrill Lynch, Pierce, Fenner & Beane and their predecessors in interest throughout the existence of both partnerships, and that he had, at all times from April 1, 1940, personal knowledge of their affairs. From such personal knowledge he states unequivocally that neither Merrill Lynch, Pierce, Fenner & Beane nor their predecessors in interest had any transactions whatsoever with plaintiff either in December 1940 or January 1941, or at any other time; that there

was no merger or consolidation of Fuller, Rodney & Co. with Merrill Lynch, Pierce, Fenner & Beane or their predecessors; that neither of the latter firms in any way became the successors in interest to Fuller, Rodney & Co., nor did either of them assume the liabilities of the Fuller firm; that defendants' predecessors arranged with Fuller, Rodney & Co. to take over such customer accounts as were satisfactory to defendants' predecessors and where the customer consented thereto; that Merrill Lynch, E. A. Pierce & Cassatt did not assume any liability in respect to accounts not transferred to them from Fuller, Rodney & Co.; and that plaintiff's account was not transferred.

Attached to Hargrave's affidavit is a correct copy of the entire agreement between Fuller, Rodney & Co. and Merrill Lynch, E. A. Pierce & Cassatt, stating that it embodied "all of the terms and conditions of the transactions between said two co-partnerships." It sets forth that the partnership of Fuller, Rodney & Co. was to be dissolved and their affairs wound up as promptly as possible after April 30, 1941; that Fuller, Rodney & Co. desired to transfer those accounts where the customer consented and the account was satisfactory to defendants' predecessors; that no liability was to be incurred by defendants' predecessors in respect to any account not transferred to them; that there was no obligation on them to assume the employment contracts with any employees of Fuller, Rodney & Co., nor any lease liabilities, with the one exception that defendants' predecessors would take over the lease of Fuller, Rodney & Co. with respect to their New York office at 745 Fifth avenue; that all files and records of Fuller, Rodney & Co. remain the property of that firm; and that two of the partners of Fuller, Rodney & Co. were to become partners of Merrill Lynch, E. A. Pierce & Cassatt.

The affidavit of Byron G. Webster states that at all times in 1940 and until April 30, 1941, he was a co-partner of Fuller, Rodney & Co. or of their predeces-

sor in interest, Fuller, Rodney & Redmond, and had
personal knowledge of the affairs and transactions of
said copartnerships; that in December 1940, and Jan-
uary 1941, plaintiff had certain transactions with the
Fuller firm and their predecessors, in the course of
which he paid to them the sum of $6,500; that the
transactions, had in connection with the purchase and
sale of certain butter, had been fully executed and
completed prior to February 1, 1941, and no further
transactions occurred thereafter; that upon dissolu-
tion of Fuller, Rodney & Co. at the close of business
April 30, 1941, many of the company's customers trans-
ferred their accounts to other brokerage firms, includ-
ing Merrill Lynch, E. A. Pierce & Cassatt, the prede-
cessors in interest of defendants; that all transfers
made to defendants' predecessors were with the con-
sent of the customer and of Merrill Lynch, E. A. Pierce
& Cassatt; that no consent to the transfer of the ac-
count of plaintiff was obtained from him or from the
copartnership, and that plaintiff's account was not
transferred either to Merrill Lynch, E. A. Pierce &
Cassatt or their successors in interest; that defend-
ants' predecessors did not assume any liabilities of
the copartnership of Fuller, Rodney & Co., nor take
over any of their assets; that there was no merger or
consolidation of the two firms, nor did Merrill Lynch,
E. A. Pierce & Cassatt in any way become the succes-
sors in interest to Fuller, Rodney & Co. Webster fur-
ther alleged that the copartnership of Fuller, Rodney
& Co. exists and is in the process of liquidation; that
it is entirely solvent and amply able to pay the entire
amount claimed by plaintiff, or any portion thereof,
in the event that a judgment should be rendered
against the firm or any partner thereof; that a partner
of Fuller, Rodney & Co. is and has been, at all times
since the dissolution of the copartnership April 30,
1941, resident in the city of Chicago and is, and has
at all times been, subject to the jurisdiction of the

courts of Cook county, Illinois, where service could have been had upon him; that affiant resides at the Ambassador East Hotel, Chicago, is employed in the local offices of Merrill Lynch, Pierce, Fenner & Beane, and that the facts of his residence and employment were made known to plaintiff; that the copartnership of Fuller, Rodney & Co., which still exists for the purpose of liquidation, has through its agent, Harold M. Keele, who was duly authorized in that respect, offered to enter the appearance of the firm and its individual partners in this cause, upon assurance of plaintiff that he would dismiss his suit as to defendants; and that the copartnership of Fuller, Rodney & Co. has also offered through its agent, Keele, in addition to entering its appearance and the appearance of the respective partners in this proceeding, to deposit with the court or with suitable escrowee, security for payment of any judgment which plaintiff might obtain against Fuller, Rodney & Co. or any of its partners in these proceedings, if plaintiff would give assurance that upon the entry of such appearance and the deposit of such security, he would dismiss his complaint as to Hargrave and Merrill Lynch, Pierce, Fenner & Beane. Webster's affidavit is predicated on his personal knowledge of the matters stated, and he alleged that if sworn as a witness, he could and would testify thereto.

Plaintiff's affidavit in opposition to the motion for summary judgment and in support of his allegation in the complaint that he "paid to defendants or their predecessors in interest the sum of Six Thousand Five Hundred Dollars ($6,500) as fiduciaries for plaintiff, to wit, as brokers," etc., although prefaced with the statement that it is based on his personal knowledge, admits that "The true and material facts concerning the transactions between the partnership of Fuller, Rodney & Company and Merrill Lynch, Pierce, Fenner & Beane and its predecessors in interest are unknown to this affiant except by information and belief and are

known only to members of said partnerships and their respective members, agents, attorneys and employees whose affidavits affiant is unable to procure by reason of hostility, since they are defendants or take the part of the defendants to this cause.'' In the succeeding paragraphs of his affidavit, which embraces some nine pages of the abstract, plaintiff sets forth at length what he *believes* such persons would testify to if sworn, based upon ''his knowledge, information and belief concerning not only the transactions between the foregoing partnerships but other similar transactions between other brokerage firms doing a similar business and entering into substantially similar transactions.'' He states what he *believes* to be the material facts concerning the transactions between the two partnerships, tending to support his theory of a merger or consolidation under which defendants or their predecessors in interest took over all the assets of Fuller, Rodney & Co., including their good will, and thereby assumed all their liabilities. Obviously plaintiff would not be competent to testify to most of the allegations made, because he admits at the outset that the true and material facts concerning the transactions are unknown to him ''except by information and belief.'' He undoubtedly hoped, by discovery, depositions and order of the court, to compel the production of ''necessary papers and documents in their [defendants'] possession'' to prove that the transactions conformed to his theory of a merger or consolidation and were otherwise than appear from the affidavits of Hargrave and Webster and the written agreement between the two partnerships which embodied ''all of the terms and conditions of the transactions''; and if he had availed himself of the provisions of the Civil Practice Act with respect to discovery (Ill. Rev. Stat. 1941, ch. 110, par. 182 [Jones Ill. Stats. Ann. 104.058]) and of the rules of the Supreme Court prescribing the procedure under which discovery may be had (Ill. Rev. Stat. 1941, ch. 110, pars. 259.17, 259.19 [Jones Ill.

Stats. Ann. 105.17, 105.19]), he could have compelled the production of such documents as would be material to the issues involved, and he could have taken the depositions of the persons whose affidavits he was unable to procure, as he says, "by reason of hostility." But since he failed to pursue the remedies afforded him by statute, the trial court properly excluded from consideration the numerous speculative and conjectural allegations which plaintiff could not have sustained by his own testimony.

Since the adoption of the Civil Practice Act in 1933, the courts of this State have approved the procedure to be followed by a trial court upon a motion for summary judgment. In *Shirley v. Ellis Drier Co.*, 310 Ill. App. 518, Mr. Justice McSurely, speaking for the court, said that " 'the Court takes the affidavit of plaintiff and the affidavit of the defendant, compares both of them precisely as if the affidavits represented oral evidence of witnesses appearing on the witness stand, and then determines whether, if the evidence contained in these affidavits was orally submitted to the Court, there would be something left to go to a jury. If there is anything left to go to the jury the motion for summary judgment is denied. If what is contained in the affidavits would have constituted all the evidence before the Court and upon such evidence, there would be nothing left to go to the jury, and the Court would be required to direct a verdict, then a summary judgment will be entered.' " Although the decision was overruled by the Supreme Court in *Shirley v. Ellis Drier Co.*, 379 Ill. 105, the test applied by the Appellate Court was approved as correctly announcing the rule when summary judgment may be entered. Applying the test to the affidavits of the respective parties in this proceeding, it is clear that no issue of fact was submitted to the court. As heretofore set forth, the facts in defendant's two affidavits and the agreement of April 18, 1941, which would have been admissible in a trial of the cause, were not contradicted by any evi-

dence in the record except plaintiff's statement denying the same upon information and belief, with an admission that his allegations were made without knowledge of the facts. The trial court properly disregarded the numerous allegations contained in plaintiff's affidavit, by which he hoped to prove, through documents which are not of record and depositions which were never taken, that the transactions between the two partnerships constituted a consolidation. Under the ruling in *Eagle Indemnity Co. v. Haaker,* 309 Ill. App. 406, the court in this proceeding was obliged to disregard the bulk of plaintiff's affidavit as being improper and insufficient. In that case the court cited rule 15 of the Supreme Court, which provides that the affidavit of a defendant resisting entry of summary judgment "shall not consist of conclusions but of such facts as would be admissible in evidence and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto," and said that the proceeding for summary judgment is an inquisition to determine whether there is any issue of fact to be tried, and that although the pleadings should be considered, "the question to be determined is of fact to be ascertained by the evidence." The requirements of an affidavit filed in opposition to a motion for summary judgment are no different from those necessary in support of a summary judgment in favor of plaintiff. It was so held in *Chicago Title & Trust Co. v. Cohen,* 284 Ill. App. 181, where we affirmed an order of the superior court striking the affidavit of merits and entering a summary judgment for plaintiff because defendant's affidavit consisted of conclusions and incompetent evidence in violation of rule 15 of the Supreme Court.

Plaintiff evidently realizes the insufficiency of his affidavit because he argues that the court refused to grant the discovery of documents which would have established the evidentiary facts relating to the succession in interest between the two partnerships, with-

out which it was ''impossible for the trial court to pass upon the issues . . . and determine whether a merger or consolidation . . . did or did not occur in fact and in law,'' and he assigns such refusal as ground for reversal. Upon careful examination of the record we find nothing which shows that plaintiff presented a motion requesting such discovery, and defendant's counsel say that they ''are frankly puzzled at the statement of the plaintiff that 'the trial court refused to grant the discovery of documents and matters above referred to.' '' There does appear of record a notice prepared by plaintiff that he would appear before Judge BOLTON and move for the entry of an order against Hargrave, directing the discovery of certain documents and matters relating to this controversy ''as set forth in the order, a copy of which is attached hereto,'' and a proposed order drafted by the plaintiff is incorporated in the record. The statement of defendant's counsel that plaintiff merely filed these documents in the clerk's office is substantiated by a certification of the clerk in the record with respect to plaintiff's notice, but none with respect to his draft order. It is clear, however, that no order was ever entered by the court denying plaintiff's motion for discovery, and it does not appear of record that he ever presented the motion or sought the court's ruling thereon. Since a denial of a right by a court can be evidenced only by a ruling on order of the court, we are obliged to ''disregard such facts as outside the record.'' *People v. Salbar*, 282 Ill. App. 506. In *Merkel v. Schmidt Baking Co.*, 72 Ill. App. 239, an appeal was taken from an injunctional order which did not appear in the record, and in the absence of such order the court dismissed the appeal, saying: ''The record should show some order of the court as the basis for an appeal. In absence of an order for injunction in the record we feel constrained to dismiss the appeal in this case, of the court's own motion,

which is done accordingly." And in *O'Donnell v. Quinn*, 100 Ill. App. 5, the court held that it had no jurisdiction to consider an appeal where there was no record showing the judgment of the court below, even though the bill of exceptions stated what judgment the court had entered.

Aside from the propriety of entering summary judgment upon the pleadings and affidavits presented, plaintiff argues that his action for an accounting does not fall within the provisions of section 57 of the Civil Practice Act [Jones Ill. Stats. Ann. 104.057], and therefore the trial court erred in granting defendant's motion for summary judgment. Under par. 2 of sec. 57 a defendant is given the right to summary judgment in all cases where the plaintiff would have such right under par. 1 of the same section, and par. 1 gives a party a right to a summary judgment in an action in equity. This proceeding being a suit for an accounting against a fiduciary, it is an equitable action and falls within the provisions of the act. In *Gliwa v. Washington Polish Loan & Building Ass'n*, 310 Ill. App. 465, the court approved the general rule that summary procedure should be limited to cases simple in their nature, but pointed out that the authorities do not undertake to lay down any precise rule, and that the matter must manifestly be left largely to the discretion of the trial judge, who "should be quick to sense the actual situation. The mere fact that defendant presents complicated defenses may prove he has astute, able and learned counsel. It does not necessarily prove the case is complex or complicated. To so hold would emasculate the statute." Under rule 113 of the New York Civil Practice Act, summary judgment is permitted "in an action to recover a debt or liquidated damage arising on a contract, express or implied . . . ." This provision is substantially identical with section 57 of the Illinois Act. Construing that provision in *City Bank Farmers' Trust Co.*

*v. Charity Organization Society of City of New York,*
265 N. Y. Supp. 267, the court entered an order for
summary judgment in an equitable action which sought
an accounting by a trustee, and the decision was af-
firmed by the New York Court of Appeals in the case
bearing the same title, reported in 191 N. E. 504.
Plaintiff argues that under the provisions of the Illi-
nois Civil Practice Act, motion for summary judgment
can be made only in suits upon contracts express or
implied, or judgments or decrees for the payment of
money, and he says that this proceeding is not such
an action. However, the theory of plaintiff's suit is
that by agreement, express or implied, defendants or
their predecessors in interest assumed the liability of
Fuller, Rodney & Co., and par. 1 of sec. 57 includes
actions at law or in equity, upon contracts express or
implied, and therefore we think this proceeding falls
within the provisions of the statute.

In support of his legal conclusion that defendants or
their predecessors assumed the liabilities of Fuller,
Rodney & Co., plaintiff stresses two provisions of the
agreement of April 18, 1941, (a) the assumption of
the lease, by defendants' predecessors, of one of the
partnership offices in New York, and (b) the entrance
into the firm of Merrill Lynch, E. A. Pierce & Cassatt,
of two of the partners of Fuller, Rodney & Co., and
he argues that these circumstances, and especially the
admission of two of the partners of the dissolved firm
into membership in another firm, create in the latter
new partnership liability for all the acts, obligations
or duties of the former partnership. No applicable
cases are cited to support the argument, and we do not
understand the Uniform Partnership Act, which plain-
tiff invokes as his authority, as so holding. If that
were the law, a partner of a liquidated and dissolved
firm would, as defendant's counsel suggest, forever be
denied access to membership with any other partner-
ship.

Since plaintiff seeks only an accounting and a money decree for transactions had exclusively with Fuller, Rodney & Co., it is difficult to understand why he does not avail himself of their offer to appear in the suit and give security for any judgment that may be entered against them or any of the partners, instead of pursuing the doubtful theory of a merger or consolidation of the two firms, without any evidentiary basis to support it. In reply to this query by the court on oral argument, plaintiff answered that he was convinced Fuller, Rodney & Co. would persist in defending his suit and he preferred settlement; that he was well acquainted with various of the defendant partners, for whom he professed friendship, and was quite confident that he could prevail upon them to make a settlement. The implication of that statement, aside from indicating a confession of weakness in his own cause, is that plaintiff sued these defendants, rather than Fuller, Rodney & Co., because he thinks they may be induced to settle a claim, however doubtful, rather than engage in protracted litigation, with its attendant nuisance and expense.

We are of opinion that the decree of the superior court granting summary judgment to Homer P. Hargrave, as a copartner of Merrill Lynch, Pierce, Fenner & Beane, was proper, and it is therefore affirmed.

*Decree affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.