Mrs. J. E. ROBERTS, Plaintiff in Error,

v.

A. H. CANNING, Defendant in Error.

No. 42046.

Supreme Court of Oklahoma.

June 3, 1969.

Smith, Leaming, Swan & Burton, Oklahoma City, for plaintiff in error.

Merson, Campbell & Merson, Oklahoma City, for defendant in error.

McINERNEY, Justice.

Mrs. Roberts instituted this action to quiet title to a leasehold estate. Canning, lessor and defendant in the trial court, cross-petitioned seeking to quiet title as owner of the premises. The trial court held that the lease expired by its express terms since the option to renew was not exercised thirty days prior to the expiration of the primary term. Judgment was rendered for Canning, and Roberts appeals.

Under the terms of the written lease, the lessee was granted the option of extending the primary term of the lease by written notice to the lessor at least thirty days prior to the expiration of the primary term. The question to be determined is the date of the expiration of the primary term.

The pertinent portions of the lease provide:

"2. To Have and to Hold for the term of Ten (10) years, commencing at 12:00 o'clock noon, Standard Time, the first day of July, 1954, and ending at the same hour the first day of July, 1964.

"3. As rental for this lease, Lessee agrees to pay $12,000.00, payable One Hundred and no/100 Dollars ($100.00) per month, on the first day of each month in advance, to Lessor unless otherwise provided herein.

"Lessee's obligation to pay rental shall begin on the day the motor vehicle service station, to be erected by Lessee, is opened for business. However, if said service station is not opened for business within one hundred and twenty days from the date Lessor gives Lessee possession then rental shall begin at the expiration of said one hundred and twenty days. * * *

"11. Lessor hereby grants unto Lessee the continuing option of extending the primary term of this lease for Three (3) additional separate successive periods of five years each, at the same rental ($100.00) per month) and upon the same terms and conditions as the primary term, said options to be exercised as to each such extension period only by written notice to Lessor at least thirty days prior to the expiration of the primary term hereof or the current extension period.

"14. This lease shall not become effective until executed by Lessee and a counterpart thereof so executed, delivered to the Lessor. Lessor agrees, upon Lessee's request, to furnish * * *."

The original parties to the lease were Canning (lessor) and one Cline as the lessee. Roberts succeeded to the interest of Cline by purchase of his leasehold estate at Cline's bankruptcy sale.

The lease was dated April 16, 1954 and executed by lessor on the same day. Pursuant to clause numbered "14" extracted above, Cline executed the lease on June 11, 1954 and received possession that date. The expiration date of 120 days, under "3" above, falls on October 9, 1954. Canning co-signed the mortgage with Cline to obtain financing for Cline to construct the service station. The service station was completed and opened for business in November or December, 1954. Cline paid lessor the sum of $273.36 on December 1, 1954 as rent from October 9, 1954 to January 1, 1955.

Cline then sub-leased the site to Mid-Continent Petroleum Corporation, now D-X Sunray. The service station lease between Cline, as lessor, and Mid-Continent, as lessee, dated and executed on May 10, 1954, provided for a term of 10 years from and after the date a gasoline service station was completed and accepted by Mid-Continent, with a stipulated monthly rental upon completion. Occupancy was required on or before 150 days from the execution of the lease. Mid-Continent was granted options for extension similar to those con-

tained in the Canning-Cline lease. Canning agreed by endorsement on the Mid-Continent lease that Cline's default would not invalidate the lease between Canning and Cline to the \prejudice of Mid-Continent if Mid-Continent remitted to Canning the rental due from Cline. The sub-lease by Cline to Mid-Continent did not alter the terms of the lease between Canning and Cline.

Lessor made notations to complete his office records. On the Canning-Cline lease, he wrote, "Rent starts Oct. 9–1954". His ledger sheet entry is:

"Joe Cline

Mid Continent Oil Co. Lease $100.00 per Month

10 year, 3 five year options lease start-ing Oct. 9, 1954

Lots 17, 18, 19, 20, 21, and 22 of Blk. 14, Wilmont P.A."

■ Cline later filed bankruptcy proceedings. The lease was listed as an asset and purchased by Roberts. Roberts received a trustee's deed dated April 4, 1962. The notice of the bankrupt sale stated, in pertinent part:

"A Filling Station site lease dated 4–16–54, with the lessor, A. H. Canning, covering * * * (described property)

"The lease is for a term of 10 years from 7–1–54, plus three 5-yr. options to renew. * * *"

and further describing the rental, the sub-lease to D–X Sunray Oil Co., the mortgage, and other particulars. The purchase of the original lessee's interest by Roberts at the bankruptcy sale neither enlarged nor diminished the rights or obligations of the lessee under the lease. In federal court bankruptcy proceedings, a purchaser from the trustee takes no better title or estate than the bankrupt or trustee had, absent circumstances not present here. Viersen v. Boettcher, Okl., 387 P.2d 133.

Roberts received a letter dated June 25, 1964, notifying her of the expiration of the lease on July 1, 1964 due to her failure to give written notice at least 30 days prior to the expiration of the primary term. Roberts attempted to extend the lease by letter dated June 30, 1964. The offer was rejected.

Roberts contends that the primary term stated in the lease is 10 years from the date rental payments commence. The date of the expiration of the primary term, under this theory, would be October 9, 1964. Canning contends that the primary term is expressly stated in the lease as 10 years, ending on July 1, 1964.

■ Examining the contract and looking to the instrument alone, 15 O.S.1961, § 155; Commerce Acceptance Company v. Campbell, Okl., 368 P.2d 496, we think it should be construed as follows: The lease term began on July 1, 1954, and ended on July 1, 1964. The contract so provided, and, in the absence of a showing of mutual mistake or fraud, we would not be authorized to change this provision. The total amount of the rental was $12,000.00. The contract so provided, and, in the absence of a showing of mutual mistake or fraud, we would not be authorized to change this provision. There is no irreconcilable conflict between these two provisions. The rental was for the entire term. Payments on the total rental were to be made at the rate of $100.00 per month, with the obligation to commence payments deferred until the station opened for business, but not later than 120 days.

The lessee agreed to pay $12,000.00 for a ten year lease commencing at noon on the first day of July, 1954. This express provision does not permit an interpretation by us that the lessee agreed to pay $100.00 per month for 120 months commencing 120 days after receiving possession of the site. The parties could stipulate to any agreed amount of payment per month without extending or diminishing the lease term. Suppose the ten year lease had stated the total amount of the rental as $12,000.00 payable at the rate of $200.00 per month from the date the service station opened for business, but not later than 120 days from the date of possession. The lessor

would not be entitled to receive more than the agreed total rental or shorten the term of the lease merely because the stipulated total rental was received prior to the expiration of the term. Likewise, when the term and the total amount of rental are clearly stated, the obligation to pay installments does not extend the expiration date. The last payment is simply the remaining balance due under the contract, a not infrequent occurrence in commercial or banking circles. If a portion of the rent is made payable at fixed periods but no time is provided for the payment of the balance, such balance is payable at the expiration of the term. 52 C.J.S. Landlord and Tenant § 511, page 482. In short, the manner or mode of payment to satisfy the stipulated total amount does not affect or alter either the agreed amount ultimately due or the express termination date of the lease. The parties may provide for payment of rental in any manner mutually agreeable.

The expiration date of the lease is expressly stated and, therefore, an extension of this date may not be implied. 15 O.S. 1961, § 172. Roberts purchased the lease in bankruptcy with knowledge of the express term stated in the notice of the sale. Lessor's notations and records did not, and could not, mislead Roberts. The notations are not inconsistent with the lease and payment schedule. Roberts did not see, or rely on, Canning's records. If the construction of the lease that Roberts desires had been the intent of Canning and Cline, the term would have been expressed as appears in the Mid-Continent sub-lease without stating specific dates. We hold that Roberts is bound by the express terms of the lease and that the expiration date of the lease is July 1, 1964.

Roberts contends that if the expiration date is determined to be July 1, 1964, as expressly stated in the lease, equity should intervene and prevent a forfeiture of the lease. The assertion is made that lessor will gain a windfall if lessee is not permitted to exercise the option to renew the lease. Roberts, as successor lessee of Cline by virtue of her purchase of the lease at a distress sale for 16% of the loan value, may not invoke equity to create a right where none exists. Burns v. Woodson, Okl., 363 P.2d 233; Welch v. Montgomery, 201 Okl. 289, 205 P.2d 288, 9 A.L. R.2d 294; York v. Trigg, 87 Okl. 214, 209 P. 417.

"The decisions concur in holding that in an option contract, because of its one-sided nature, time of election is of the essence in equity as well as at law, whether expressly so stipulated or not, and that, therefore, the failure of the optionee to exercise his right of election and to give notice within the time stipulated in the option, or implied by law, ends his option rights.

"Courts look upon election as a condition precedent to the vesting of any property right at all in the optionee. The case differs, therefore, from penalties and forfeitures of property rights already acquired, and from timely payment of the price following an election." James, Option Contracts, § 862, pages 400, 401.

The same rule is announced in Pomeroy's Equity Jurisprudence, Part 2, § 453b, page 296. Application of the rule, and exceptions to the rule, are found in 44 A.L.R.2d 1360 and 51 A.L.R.2d 1404. See also McClellan v. Ashley, 200 Va. 38, 104 S.E.2d 55.

"A court of equity does not have unbridled authority under the guise of justice and equity to substitute its judgment in opposition to the law. Equity follows the law."

The lease expired by its own terms on July 1, 1964 in the absence of an option to renew the lease by written notice prior to June 1, 1964. The option was not timely exercised. The lease expired.

The judgment of the trial court is affirmed.

All the Justices concur.