**FRENCH ENERGY, INC., an Oklahoma Corporation, Appellant,**

v.

**Dorothy ALEXANDER, an individual and attorney; Billy Clift, an individual; and Billy Clift, Executor of the Estate of H.E. "Bill" Clift, deceased, Appellees.**

No. 69749.

Supreme Court of Oklahoma.

Oct. 16, 1991.

Eric R. King, Linda A. King, Constance Ford Mungle, King & King, Edmond, for appellant.

Thomas B. Goodwin, Cheyenne, for appellees.

LAVENDER, Justice.

The question this court is asked to decide is whether a lessee of an oil and gas lease purchased at a judicial sale can recover on grounds of unjust enrichment the consideration paid, when the estate did not hold the interest that was the subject of the sale. We find that lessee, Appellant herein, is entitled to such equitable relief, notwithstanding the doctrine of *caveat emptor*.

## FACTS

H.E. (Bill) Clift owned an oil and gas lease covering section 18–T13N–R25W, of Roger Mills County, Oklahoma. Bill died in 1981 and his son, Billy Clift (Billy/Appel-

lee) was named executor of the estate. In 1986, French Energy, Inc., (Appellant) approached Billy about purchasing a lease in section 18. Billy advised French to contact Dorothy Alexander, (Appellee) the attorney representing the estate.

Following Dorothy Alexander's instructions, French submitted a written bid and the district court on May 28, 1986 executed an order allowing French to purchase a lease on section eighteen for the sum of eighteen thousand, eight hundred dollars ($18,800). French paid Dorothy Alexander five hundred dollars ($500.00) in attorney fees.

Shortly thereafter, French learned the mineral rights it had purchased were, in fact, subject to a pre-existing lease dated July 9, 1971 and having a ten year primary term. Though the initial term of the lease had expired, there was production from another section within the unit and therefore, the lease continued in force since it was executed before passage of 52 O.S. 1981, § 87.1(b), our statutory "Pugh clause." With the adoption this statutory "Pugh clause," production from within a unit will apparently no longer extend a leasehold interest outside the unit for more than ninety days beyond the expiration of the primary term of such lease.

Upon discovering the lease was encumbered, French demanded the return of its money including the $500 it had paid for attorney fees. Appellees refused, after which French filed suit seeking actual and punitive damages on the issues of fraud or in the alternative, rescission of the lease and restitution.

Appellees countered with a motion for summary judgment based on what they considered the undisputed material facts of the case and attached excerpts from interrogatories and depositions in support of it. Their brief argued the doctrine of *caveat emptor* was dispositive of the issue in that the lease was purchased in an estate sale and under *Hammert v. McKnight*,[1] and *Selement v. Gibson*,[2] the estate could and did sell only what interest it had to sell.

Appellant, responded, by stating why the doctrine of *caveat emptor* was inapplicable to the present situation. Further, Appellant alleged Appellees were guilty of intentional fraud citing to affidavits and deposition testimony, or in the alternative, constructive fraud, mutual mistake or unjust enrichment.[3] Finally, in answer to Appellees' motion, Appellant requested the trial court grant summary judgment based on either of its theories of constructive fraud or unjust enrichment. The trial court, however, ruled in Appellees' favor on the motion finding there was no dispute as to the sale proceedings and that, whatever its worth, Appellant owned a recorded lease.

The Court of Appeals affirmed the trial court. The appellate court stated, however, affirmation did not suggest approval of Appellees' theory on the doctrine of *caveat emptor* in judicial sales; rather, the court found Appellant should have raised a breach of warranty argument pursuant to our rulings in *Walker & Withrow, Inc. v. Haley*,[4] and *Oklahoma City, v. Harper*.[5] Having failed to raise this argument at the trial court level, Appellant could not raise it on appeal. Moreover, the court found Appellant was not entitled to relief since it had not met its burden of proof to overcome Appellees' motion for summary judgment. We previously granted certiorari.

In analyzing this case, we use the standard of review as articulated in *Ross v. City of Shawnee*,[6] where we stated:

In reviewing the grant or denial of summary judgment, this Court will examine the pleadings and evidentiary materials to determine what facts are material to plaintiff's cause of action, and to determine whether the evidentiary materials introduced indicate whether there is a substantial controversy as to one materi-

**1.** 132 Okla. 14, 269 P. 289 (1928).

**2.** 171 Okla. 513, 43 P.2d 759 (1935).

**3.** Plaintiff's response brief to Defendants' Motion for Summary Judgment at 145–56.

**4.** 653 P.2d 191 (Okla.1982).

**5.** 198 Okla. 493, 180 P.2d 162 (1947).

**6.** 683 P.2d 535, 536 (Okla.1984).

al fact and that this fact is in the movant's favor. All inferences and conclusions to be drawn from underlying facts contained in such materials as affidavits, admissions, depositions, pleadings, exhibits and the like, must be viewed in a light most favorable to the party **opposing** the motion.

## ANALYSIS

 We note initially, the appellate court erred in deciding Appellant's failure to argue breach of warranty was fatal to obtaining relief. This lease was purchased at a **judicial sale** and as such breach of warranty is an irrelevant defense.[7] Likewise, the trial judge ruled improperly in granting Appellees motion for summary judgment, rather, summary judgment should have been granted for Appellant on the basis of unjust enrichment.[8]

## I. UNJUST ENRICHMENT

 Recovery, based on unjust enrichment depends upon a showing that Appellees have money in their hands that, in equity and good conscience, they ought not be allowed to retain. Unjust enrichment was the basis for our ruling in *Conkling's Estate v. Champlin*,[9] a case we find analo-gous to the one at bar. In *Conkling's Estate,* "the plaintiff paid to the deceased in her lifetime $100 per month under the misapprehension that she was in necessitous circumstances. While it is true the record is silent as to any misstatement on the part of Mrs. Conkling that would render her guilty of fraud in representing her true financial condition, nevertheless the facts are such as to justify a conclusion of nondisclosure on her part and to warrant the view of the learned trial judge that payment was made by [Plaintiff] and received by Mrs. Conkling under a misapprehension as to her true financial condition."[10]

Likewise, the facts of this case manifest that, regardless of fault, the oil company was not aware of the prior lease when it paid the bonus money to executor. The executor, however, was aware of the existence of a pre-existing lease[11] though he may not have appreciated its significance; if he did, his retention of the bonus money is particularly offensive to principles of equity, if not, there was at the very least, a mutual mistake that was basic to the parties' bargain[12] in that Appellee specifically agreed to convey to Appellant the present right to explore for oil and gas.

In *Conklings' Estate,* we concluded:

7. *Hammert*, 132 Okla. 14, 16, 269 P. 289, 291 (an executor cannot bind the estate by any covenants of warranty). The holdings of *Walker & Withrow, Inc.*, 653 P.2d at 191, and *Oklahoma City*, 198 Okla. at 493, 180 P.2d at 162, are therefore not applicable to the present case.

8. The Court of Appeals noted that the record contained no motion for summary judgment filed by French only a "request" for such in its response to Appellee's motion for summary judgment. However, District Court Rule 13(e) states, "If it appears to the court that there is no substantial controversy as to any material fact and that one of the parties is entitled to judgment as a matter of law, the court shall render judgment to said party **whether or not he is the moving party.**"

9. 193 Okla. 79, 141 P.2d 569 (1943).

10. *Id.* at 80, 141 P.2d at 570.

11. Deposition of Billy Clift at 38.

12. Appellee Alexander was also aware of a pre-existing lease. *See* Deposition of Dorothy Alex-ander at 25. "Q. Is it your testimony that you were unaware that there was an existing oil and gas lease covering any of those properties that we have just referred to? A. I knew that there was production from both properties. I assumed there was a lease because it (sic) was production. Q. So, the estate had received some revenue checks, had they, from a purchaser, to your knowledge? A. I believe there may have been some, yes. Q. Do you remember the last time the estate received any revenue checks on these interests? A. It has been quite sometime. I couldn't recall when. Q. But you were personally aware that some revenue checks had been delivered to the estate for oil and gas production? A. That's right. Q. And you previously stated today that you were aware that they had been delivered on both the Section 18 and 17 properties? A. That's right. Q. As an attorney, would that not have been sufficient information to cause you to believe that there must be an existing oil and gas lease covering both Section 17 and Section 18? A. If you are asking me if that's sufficient notice that they were both on the same lease, no."

The basis of recovery allowable is under the doctrine of unjust enrichment.... Where innocent misrepresentation or non-disclosure is the sole ground for restitution, restitution is granted only if the misrepresentation or non-disclosure was material.

Where mutual mistake is the sole ground for restitution, restitution is granted only if the mistake was basic.[13]

In the present case, the mineral rights French thought it was purchasing were being held by production from within the unit. The contract, in clear and unambiguous terms, purported to convey the present right to explore for oil and gas.[14] However, there was nothing to convey.[15] To allow Appellees to keep the bonus money in exchange for nothing would result in them being substantially and unjustly enriched[16]. We refuse to allow one party to profit by the mistake of another where, as here, both parties can be returned to the position they were in before the transaction. In short, this case is a classic illustration of when, in accordance with general principles of common justice and equity, Appellees will be required to do what it is they promised. Since this is not possible in that the mineral rights are subject to a pre-existing lease, we order the contract be rescinded and Appellant's money refunded.

## II. CAVEAT EMPTOR

Appellees have maintained throughout this suit, however, that the doctrine of *caveat emptor* is controlling. Specifically,

---

**13.** 193 Okla. at 81, 141 P.2d at 571 (citation omitted).

**14.** *Van Horn Drug Company v. Noland,* 323 P.2d 366, 367 (Okla.1958) (syllabus by the court). Where the terms of the contract are not subject to interpretation, the construction afforded will be determined by the court not a jury."

**15.** Appellees insist that, "[t]he contention of the Appellant that it received nothing for its money is not well taken because the Appellant acquired the estate's right to explore for oil or gas **in the event that the pre-existing lease terminated** and the subject mineral interest reverted unencumbered to the estate on or before the 28th day of May, 1986." Appellees' argument is meritless. Appellant did not bargain for a "top lease." A top lease is where the lease taken is subject to pre-existing lease that has not expired when the second lease was taken. *Stoltz, Wagner & Brown v. Duncan,* 417 F.Supp. 552 (W.D.Okla.1976). In *Cutright v. Richey,* 208 Okla. 413, 416, 257 P.2d 286, 289 (1953), we stated, "A grantor in his deed is presumed to have made all the reservations he intended to make and he is not permitted to derogate from his grant by showing that some reservation was intended, but not expressed." And in *Siniard v. Davis,* 678 P.2d 1197, 1200 (Okla.App.1984), the court expressed the following opinion:

Appellants argue that the proper construction to be placed on a general warranty of title clause in a top lease is that the lessor warrants he owns the minerals and has the authority to convey right of entry, exploration, production, and possession **subject only to the right, if any, of a prior unreleased lease of record.** We believe that if Appellants desired this result they could have easily inserted in the top lease the above stated language or could have stricken the warranty clause in said top lease in the same manner they struck the clause concerning crop damages..... The covenant of warranty contained in the top lease must be given its plain effect and intent since the warranty clause and the oil and gas lease do not contain any limitations, exceptions or qualifications.

While we acknowledge this is not a suit for breach of warranty, this does not alter the fact that the same principle of construction applies to the present lease. Appellees will not be allowed to come back in at a later point and maintain that what they really intended to convey was in fact something less than what the contract stated. If Appellees intended by their action to convey a top lease they should have so stated it in their lease. The lease did not purport to convey the right to explore the minerals **in the event** Appellees had received back their reversionary interest prior to May 28, 1986, but rather that **as of that date,** Appellant had the right to go upon the land and explore for minerals.

**16.** Throughout this case, the $500 (five hundred dollars) paid to Dorothy Alexander has been characterized as an attorney's fee paid by French for the sale of the lease. However, the trial judge ruled that the $500 was not a fee for service, rather, **additional consideration** for the lease. Hearing to Compel Answers to Certified Questions, July 20, 1987 at 31. Appellees raised no objection to this ruling. Had the $500 been for legal services, Dorothy should have been allowed to retain her fee in that she did perform a service. However, that not being the case, the "additional consideration" on remand must be returned as well.

Appellees cite to *Hammert v. McKnight,*[17] and *Selement v. Gibson,*[18] for the proposition that a purchaser at a judicial sale acquires whatever interest the estate owned and his knowledge or lack thereof, as to the extent of that interest, could hardly be the basis for invalidating the judicial sale. An analysis of the line of cases interpreting *caveat emptor* does not support this contention.

In *Hammert,* the executor of an estate had not advertised the sale of land in the correct form, manner and length of time as required under the law. In addressing the merits of the case, we initiated our legal discussion by reciting the established rule that a "purchaser at judicial sales is entitled to and takes only such title as the decedent had. If the decedent had no title, the purchaser takes none. If the title is defective, the purchaser takes it, subject to such infirmities as exist."[19]

However, we continue by stating, "[t]he purchaser at the executor's sale had a right to presume that the executor would comply with the law relative to the sale of the land and that he would receive the title that was vested in the estate of the deceased at the time the sale was begun."[20] Moreover, we expressed the following principle:

> The doctrine of *caveat emptor* can never be invoked to perpetrate a fraud. The purchaser is entitled to receive the title owned by the estate of the decedent at the time of his death or prior to the sale. **The estate will never be allowed to retain its title to the property and also retain the purchase price therefor.** The law requires the estate to part with whatever title it has in and to the land before it will be permitted to retain the purchase price therefor.

In the instant case, if the probate proceedings were not sufficient to pass the title of the estate in and to the lands to the purchaser, and the purchaser, believing that he was being vested with such title, paid the purchase price to the executor, then the purchaser would be entitled under such circumstances to either have the sale rescinded and be awarded the purchase price for the land, or, on the other hand, he would be entitled to have the title to the land quieted in himself, **because it would be inequitable to allow the estate to retain its title to the land and at the same time retain the purchase price therefor.**[21]

In *Phillips v. Ball,*[22] we declared that: The doctrine (of *caveat emptor*) has been so relaxed that the purchaser at a judicial sale is entitled to expect and obtain a sound marketable title to the property sold.... If the record of a judicial sale shows a legal title upon its face, together with all other records which the law requires a purchaser to take notice, and the purchaser has no **actual** notice of any fact that impeaches and destroys the validity of the record title ... and in addition thereto the purchaser has paid a consideration for his title, then the purchaser has a right to stand upon his title, notwithstanding the title may in fact and in truth be fraudulent, void, or a nullity as between the parties and all persons with notice, actual or constructive.....

We find these cases dispositive of the notion that the doctrine of *caveat emptor* precludes Appellant from obtaining recovery. While it is true a buyer must still "beware" at judicial sales, the doctrine will not shield a seller from purporting to sell that which he does not have. We realize that these cases by their very nature are uniquely fact specific and do not readily translate into general rules of law. However, we deem it reasonable, as between these two parties, to grant Appellant judgment in his favor. We know of no rule of law or equity that forbids such resolution.

---

**17.** 132 Okla. at 14, 269 P. at 289.

**18.** 171 Okla. at 513, 43 P.2d at 759.

**19.** *Hammert,* 132 Okla. at 15, 269 P. at 290.

**20.** *Id.*

**21.** *Id.* at 16, 269 P. at 290–01 (emphasis added).

**22.** 358 P.2d 193, 199 (Okla.1960) (citations omitted, emphasis added).

## CONCLUSION

We hold summary judgment should be granted on Appellant's theory of unjust enrichment. We therefore VACATE the decision of the court of appeals and REVERSE the trial court. We REMAND with directions for the trial court to enter summary judgment in favor of Appellant, to order the contract rescinded and to enter judgment in favor of Appellant and against Appellees for the recovery of the consideration paid for the property plus recovery of the five hundred dollars ($500.00) paid for attorney fees.

HODGES, V.C.J., and DOOLIN, HARGRAVE, ALMA WILSON and KAUGER, JJ., concur.

OPALA, C.J., and SIMMS and SUMMERS, JJ., concur in part, dissent in part.

OPALA, Chief Justice, with whom SIMMS and SUMMERS, Justices, join, concurring in reversing summary judgment for the defendants and dissenting from directing summary judgment for the plaintiff.

I concur in today's pronouncement only insofar as it concludes that summary judgment for both defendants (seller and lawyer) cannot stand; I dissent from the opinion's direction that upon remand summary judgment be given to the buyer. The buyer rests its rescission claim on purely equitable theories. The law requires that they be established by *clear and convincing evidence*. There is no warrant in the evidentiary material for directing summary judgment for the buyer. I would hence remand the cause for a bench trial.

## I

### ANATOMY OF LITIGATION

French Energy, Inc. [buyer] purchased an oil and gas lease from the defendant estate at judicial sale. After learning of a recorded 1971 leasehold that was being held by production on an adjoining section, the buyer sought (a) rescission of the lease with actual and punitive damages *for actual and constructive fraud, or in the alternative* (b) *rescission and restitution on equitable grounds of mutual mistake and unjust enrichment.*

Judicial sales are generally governed by the "buyer beware" (*caveat emptor*) doctrine.[1] The seller pressed for summary judgment in reliance on that doctrine. The trial court gave summary judgment to the seller and denied buyer's quest for like relief (a) on constructive fraud or (b) on the equitable theory of seller's unjust enrichment from mutual mistake or (c) for total failure of consideration.

## II

### RESCISSION IS AN EQUITABLE CONCEPT THAT IS PARTLY CODIFIED IN STATUTORY LAW

Upon proof of compelling equities, chancery will relieve a party of an *ex contractu* duty toward another.[2] Equitable relief by rescission stands partly codified in 15 O.S.1981 § 233.[3] The two equitable grounds for rescinding the contract, *pressed by the buyer here and below, are*

---

1. *Hammert v. McKnight*, 132 Okl. 14, 269 P. 289, 290 (1928); *Selement v. Gibson*, 171 Okl. 513, 43 P.2d 759, 760 (1935).

2. Pomeroy's Equity Jurisprudence, §§ 823 et seq. (accident), §§ 839–840 (mistake-introductory) and §§ 852 et seq. (mistakes of fact) (5th Ed.1941).

3. The terms of 15 O.S.1981 § 233 are:
 "A party to a contract may rescind the same in the following cases only:
 1. *If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake,* or obtained through duress,

menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.
 2. If through the fault of the party as to whom he rescinds, *the consideration for his obligation fails* in whole or in part.
 3. If such consideration becomes entirely void from any cause.
 4. *If such consideration,* before it is rendered to him, *fails in a material respect,* from any cause; · or,
 5. By consent of all the other parties." (Emphasis added.)

*mistake*[4] *and total failure of considera-tion.*[5] Other compelling equitable grounds for relief, not codified in the cited statute, are *accident*[6] and *inadvertence.*[7] *The party seeking a contract's rescission in chancery must itself be free from negligence in the making of the agreement.*[8]

## III

## THE *CLEAR AND CONVINCING* STANDARD OF PERSUASION THAT GOVERNS EQUITABLE RESCISSION CLAIMS

Although equity follows the law and enforces a legal duty,[9] it will interpose itself upon cognizable equitable grounds to grant relief from performance.[10] The party who seeks to rescind a contract for mistake or failure of consideration must bear the burden of persuasion by *clear and convincing evidence.*[11]

**4.** See the provisions of 15 O.S.1981 § 233, *supra* note 3. Mistakes of fact and of law that will justify cancellation of a contract are defined by 15 O.S.1981 §§ 63, 64, *infra.*
The terms of 15 O.S.1981 § 63 provide:
"*Mistake of fact* is a mistake *not caused by the neglect of a legal duty* on the part of the person making the mistake, and consisting in:
1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or,
2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed." (Emphasis added.)
The provisions of 15 O.S.1981 § 64 are:
"Mistakes of law constitute a mistake within the meaning of this article only when it arises from:
1. A misapprehension of the law by all parties, all supposing that they knew and understood it, and all making substantially the same mistake as to the law; or,
2. A misapprehension of the law by one party, of which the others are aware at the time of contracting, but which they do not rectify."
See also *Watkins v. Grady County Soil and Water Con. Dist.,* Okl., 438 P.2d 491, 494 (1968).

**5.** *Wright v. Fenstermacher,* Okl., 270 P.2d 625, 627 (1954); *Davis v. Hastings,* Okl., 261 P.2d 193, 195 (1953). In *Douglass v. Douglass,* 199 Okl. 519, 188 P.2d 221, 223 (1947), the court discussed the meaning of the term "failure of consideration". Quoting Black's Law Dictionary, 3d Ed., the court stated that "the term implies that a *consideration, originally existing and good, has since become worthless or has ceased to exist or been extinguished, partially or entirely.*" (Emphasis added.)

**6.** In Pomeroy's Equity Jurisprudence, *supra* note 2, § 823 at 260–261 the author states: "The following expresses, I think, the true meaning given by equity to the term as an occasion for the exercise of jurisdiction: Accident is an unforeseen and unexpected event, occurring external to the party affected by it, and of which his own agency is not the proximate cause, whereby, contrary to his own intention and wish, he loses some legal right or becomes subjected to some legal liability, and another person acquires a corresponding legal right, which it would be a violation of good conscience for the latter person, under the circumstances, to retain." In § 828 at 265 it is stated that the

"*jurisdiction [equity power to grant relief] will not be exercised on behalf of a party when the accident is the result of his own culpable negligence or fault.*" (Emphasis added.)

**7.** In *Murphy v. Fox,* Okl., 278 P.2d 820, 821 (syllabus 2) (1955), the court held the mortgagor may be relieved of the effect of an acceleration clause in a note secured by the mortgage where the "default was not wilful but was due to *mistake or inadvertence,* and was not injurious to the mortgagee...." (Emphasis added.) The court observed that other jurisdictions have refused to accelerate an obligation when the default of payment was caused by an *accident.*

**8.** *See supra* note 4 for the pertinent provisions of 15 O.S.1981 § 63; *Ware v. City of Tulsa,* Okl., 312 P.2d 946 syllabus 2 (1957).

**9.** "It is a [long-recognized] maxim of equity uniformly adhered to by the courts that 'equity follows the law.'" *Æquitas sequitur legem. York v. Trigg,* 87 Okl. 214, 209 P. 417, 425 (1922); *Phelan v. Roberts,* 182 Okl. 202, 77 P.2d 9, 12 (1938); *Roberts v. Canning,* Okl., 455 P.2d 302 syllabus 3 (1969).

**10.** In *York v. Trigg, supra* note 9, 209 P. at 425, the court applied the maxim *Æquitas sequitur legem* (equity follows the law), but observed that a court of equity can change the terms of a contract upon equitable grounds of fraud, accident or mistake.

**11.** In *Ware v. City of Tulsa, supra* note 8 at 950, the court stated that the "*weight of the evidence required to strike down a written contract is the same whether the relief sought be rescission or reformation* if the same allegations are relied on." The court further noted at 947 in syllabus 2 that "to justify the rescission or reformation [of a written contract of sale] on the ground of mutual mistake or unilateral mistake known to the other party, the evidence must be *clear, satisfactory and free from doubt* and show *that the party who seeks reformation or rescission was himself free from negligence* in the making of the agreement." (Emphasis added.) In Pomeroy's Equity Jurisprudence, *supra* note 2, § 859a at 353–355, the author notes that "[c]ourts of equity do not *grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of evidence, but only*

The summary judgment process applies in a like manner to legal and equitable actions.[12] Where undisputed facts that are relied upon tend to support conflicting inferences, the issue presented is for the trier and not one for summary disposition.[13]

If this case were tendering a dispute governed *only* by *rigor juris* [14]—i.e., solely by the question whether *caveat emptor* precludes the buyer's recovery—the seller would doubtless be entitled to summary judgment. Were it not for the buyer's interposition of equities—i.e., rights cognizable in chancery—the buyer's claim could not be saved from defeat by summary disposition in favor of the seller. Although far from tendering pure issues of law by undisputed facts supporting a single inference, the evidentiary material in the record shows the presence of unresolved grounds for equitable relief—mutual mistake and unjust enrichment from total failure of consideration. Summary judgment to the seller was hence clearly an error. *For the*

*very same reason summary judgment may not be directed for the buyer. An appellate court will not undertake to exercise first-instance equity jurisdiction by resolving fact disputes which the nisi prius court failed to reach.*[15]

## IV

## ON THE SUMMARY JUDGMENT RECORD BEFORE US JUDGMENT CANNOT BE DIRECTED FOR THE BUYER

The buyer's mutual mistake claim is not without some support in the record. The seller's *nisi prius* brief in support of summary judgment quest states that when the buyer inquired about the mineral interest, "Billy Clift [the estate's personal representative] told the Plaintiff that the Estate's interest was still available for leasing and directed that the ... [buyer] contact the Estate's lawyer." [16] According to both the estate's lawyer [17] and its personal repre-

---

upon a certainty of the error. The courts have used a variety of expressions in characterizing the sufficiency of evidence to establish mistake. ... [I]t has been said that the evidence or the *inferences to be drawn from the evidence* must be clear, clear and satisfactory, clear and convincing, clear, convincing and unequivocal, full, clear, and decisive, strong and most satisfactory, and the like." (Emphasis added.)

**12.** For application of summary relief, Rule 13, Rules for District Courts of Oklahoma, 12 O.S.Supp.1985, Ch. 2, App., (eff. Nov. 1, 1984), whose terms govern summary judgment process, makes no distinction between legal and equitable actions. Other jurisdictions, much like Oklahoma, do not differentiate for summary judgment purposes between equity and common-law actions. *See Slezak v. Ousdigian,* 260 Minn. 303, 110 N.W.2d 1, 8 (1961); *Cloverlanes Bowl, Inc. v. Gordon,* 46 Mich.App. 518, 208 N.W.2d 598, 602 (1973); *Spencer v. Leone,* 420 S.W.2d 685, 687 (Ky.App.1967); *Fisher v. Hargrave,* 318 Ill.App. 510, 48 N.E.2d 966, 970 (1943).

**13.** *Hulsey v. Mid–America Preferred Ins. Co.,* Okl., 777 P.2d 932, 936 n. 14 (1989); *Schmoldt Importing v. Pan Am. W. Airways,* Okl., 767 P.2d 411, 414 n. 11 (1989); *Flick v. Crouch,* Okl., 434 P.2d 256, 262 (1967); *Runyon v. Reid,* Okl., 510 P.2d 943, 946 (1973); *Anderson v. Northwestern Elec. Co-op.,* Okl., 760 P.2d 188, 192 (1988); *Hargrave v. Canadian Valley Elec. Co-op.,* Okl., 792 P.2d 50, 55 (1990); *Roach v. Atlas Life Ins.*

Co., Okl., 769 P.2d 158, 163 (1989). Where there is room for a reasonable difference of opinion as to the proper inference to be drawn from the known and undisputed facts, the issue must be submitted to the jury. *Morain v. Lollis,* Okl., 371 P.2d 473, syllabus 3 (1962); *see also Sexsmith v. Union Pacific Railroad Company,* 209 Kan. 99, 495 P.2d 930, 933–934 (1972).

**14.** *Rigor juris* means the strictly rigid normative regime of the common law, unaffected by judicial discretion or by principles of equity jurisprudence. *See also* Black's Law Dictionary, 5th Ed., at 1191.

**15.** When necessary fact findings are absent from the record, the case must be remanded with directions that they be made after remand. *Davis v. Gwaltney,* Okl., 291 P.2d 820, 824 (1955); *Matter of Estate of Bartlett,* Okl., 680 P.2d 369, 377 (1984); *Sandpiper North Apartments v. Am. Nat. Bank,* Okl., 680 P.2d 983, 993 (1984); *American Ins. Ass'n v. Indus. Com'n,* Okl., 745 P.2d 737, 740 (1987); *Robert L. Wheeler, Inc. v. Scott,* Okl., 777 P.2d 394, 399 (1989); *Matter of Estate of Pope,* Okl., 808 P.2d 640, 642 (1990).

**16.** Seller's brief in support of summary judgment motion [Record at 138]; *see also* Buyer's answer brief [Record at 149].

**17.** Seller's brief in support of summary judgment motion [Record at 139]. Estate lawyer's deposition at 40–41 [Record at 120–121]: "Q. Did you have any information concerning any

sentative,[18] neither defendant was aware of an extant oil and gas lease covering the mineral interest in question.[19] In its petition below the buyer plead that it was "without knowledge of a prior lease holding the subject lands by production."[20] The buyer's title examiner had checked the deed records but apparently overlooked the 1971 oil and gas lease.[21]

Based on these undisputed facts the seller asserts, as it did below, that (a) the buyer is charged with notice that the 1971 lease constitutes in law a prior burden on the mineral estate; (b) but for the admitted negligence of buyer's title examiner the 1971 lease would have been discovered; and (c) upon further inquiry, the 1971 lease could have been readily identified as producing and hence superior. The buyer, on the other hand, claims (a) that it was not put on notice of the recorded encumbrance because the primary term of the prior lease had expired in 1981; (b) a lease being held past its primary term is not a matter of public record; and (c) the circumstances surrounding the transaction support the buyer's claim for rescission on mutual mistake or for total failure of consideration.[22]

Mutual mistake plainly calls for support in evidence that would tend to excuse, on some equitable ground, the buyer's failure (a) to discover the 1971 *recorded* lease and (b) to then inquire whether there was production—either from the demised or from some other premises—which would hold the lease beyond its primary term. *That evidentiary foundation is conspicuously absent from the record. This court's direction of summary judgment for the buyer is hence unwarranted.*

Because the evidentiary material does not fully unveil the surrounding circumstances of the transaction, but leaves a trail of unresolved fact issues material to the buyer's equitable claim, and the undisputed facts in the record do not permit *but a single inference that would favor only*

---

prior leases that might have been executed by H.E. Clift and his wife before the lease was given to French Energy? A. No." Estate lawyer's deposition at 25–26 [Record at 172–173]: "Q. Is it your testimony that you were unaware that there was an existing oil and gas lease covering any of those properties that we have just referred to? A. I know that there was production from both properties. I assumed there was a lease because it was production. Q. So, the estate had received some revenue checks, had they, from a purchaser, to your knowledge? A. I believe there may have been some, yes.... Q. As an attorney, would that not have been sufficient information to cause you to believe that there must be an existing oil and gas lease covering both Section 17 and 18? A. If you are asking me if that's sufficient notice that they were both on the same lease, no."

**18.** Deposition of Billy Clift at 14: "Q. Are you saying then that you were not aware that there was a lease that covered both sections, the interest that your dad owned in both Section 17 and Section 18? A. I'm not aware of what? Q. Were you not aware of that old lease that was executed in '71? A. No, I don't know nothing about it. Q. Then when one of these individuals that called you asked you if you knew if the minerals were held by production, do you have any idea why a well in Section 17 would hold the lease in Section 18? A. No, I don't know. I thought it was against the law. I didn't know you could do it."

**19.** In the brief on motion for summary judgment the seller denied "that prior to the sale of the lease [to the buyer] they had any information with regard to the encumbrances...." [Record at 140].

**20.** Buyer's petition [Record at 2].

**21.** Deposition of Sharon G. Wigley at 13–14 [Record at 129–130]: "Q. ...when you conducted your examination of the records in the Roger Mills County clerk's office, at that time did you determine that there was any leasehold information that ought to have been noted? A. From what this, the way this appears, it shows open. I neglected to pick up the last oil and gas lease which was producing.... Q. Do you have any explanation or rationale for how it came to be overlooked? A. No." *Whether the examiner's failure to discover the recorded lease was negligence or excusable in this scenario is clearly a matter to be resolved by the fact trier from all the circumstances adduced.*

**22.** The interposed ground of total failure of consideration that would result in unjust enrichment to the seller calls for proof that the "top lease" acquired by the buyer—a lease to commence after an expiration of the existing lease—*was worthless. Because the buyer has yet to adduce that and other evidence in support of its equity claim for rescission, the summary judgment directed by the court in this decision is unwarranted.*

*the buyer,* I would remand this cause for a bench trial.