Harlan LOKEY, Appellee,

v.

FIRST CAPITAL BANK OF
GUTHRIE, Appellant,

and

Frank Benedix, Jr., a/k/a Junior
Benedix, Defendant.

No. 87438.

Court of Appeals of Oklahoma,
Division No. 1.

Oct. 8, 1996.

Randolph S. Meacham, David S. Stratton, Meacham and Meacham, Clinton, for Appellee.

O. Clifton Gooding, Joel C. Hall, Gooding Mulinix & Hardin, Oklahoma City, for Appellant.

## OPINION

BUETTNER, Judge:

The parties agreed that the facts material to this lawsuit were not in dispute and both filed motions for summary judgment.[1] The trial court heard the motions March 15, 1996 and filed its judgment April 11, 1996 in favor of Harlan Lokey. First Capital Bank of Guthrie (Bank) appeals pursuant to 12 O.S.Supp.1993, Ch. 15, App. 2, App.Proc.Rule 1.203.

In January 1991, Frank "Junior" Benedix, a rancher, executed a note in favor of Bank which he collateralized with his cattle. In April 1993, Benedix filed a Chapter 12 petition in the Bankruptcy Court for the United States District Court for the Western District of Oklahoma. Bankruptcy Court schedules and claims were filed, including a claim by Bank. Benedix submitted a Chapter 12 Plan July 29, 1993, which included a proposal to sell some of his cattle.

---

1. Appellee Lokey was granted judgment by default against Defendant Benedix. Benedix is not a party to this appeal.

Benedix and Lokey signed a purchase agreement October 12, 1993 for the sale of 30 specifically named or numbered cows and one bull calf. Pursuant to the agreement, Lokey delivered a cashier's check payable to "Junior Benedix and First Capitol," in the amount of $33,000.00. Benedix's Chapter 12 Plan was confirmed October 14, 1993. The Plan authorized the sale of thirty cows and a bull calf, the proceeds of which were to be turned over to Bank. The check, endorsed by Junior Benedix and a Bank Vice–President, shows an October 25, 1993 cancellation date.

Benedix did not deliver the cattle promised, and Bank was informed of the nondelivery.[2] In December 1993, Bank filed an adversary proceeding in Bankruptcy Court seeking revocation of the Chapter 12 Plan alleging it was procured by fraud. The Bankruptcy Court revoked the Plan February 3, 1994.

Lokey sued claiming Benedix and Bank were unjustly enriched. Lokey asserted that he was an intended beneficiary of the Chapter 12 Plan, which constituted a contract between Benedix and Bank. When Bank revoked the Plan, according to Lokey, it rescinded the agreement. For that reason, Lokey argued that the parties should be restored to *status quo ante.*

Bank, on the other hand, alleged that Lokey was not a party to the confirmed Chapter 12 Plan and, if he was a third-party beneficiary to the Chapter 12 Plan, then he had to enforce the contract prior to the parties' rescission of it.[3] Bank also asserted that Lokey's remedy was to enforce or rescind his contract with Benedix. Bank then moved for summary judgment in its favor stating that, on the facts of this case, it had no liability to Lokey.

Although factual matters are considered, in summary judgment cases "the ultimate decision turns on purely legal determinations, i.e., whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." *Carmichael v. Beller,* 914 P.2d 1051, 1053 (Okla.1996). Consequently, the appellate court reviews summary judgments *de novo.*

■ In the case at bar, we have reviewed the evidence and find that the trial court's determination that Bank was required to return $22,355.00 is the correct legal conclusion. This case is not about contracts but is about whether Bank had money in its hands which, "in equity and good conscience," it ought not be allowed to keep. *French Energy, Inc. v. Alexander,* 818 P.2d 1234, 1237 (Okla.1991). As a result, we do not reach the issue of whether Lokey was a third-party beneficiary of the Plan.

The evidence is clear that the purchase agreement was for certain named cows and one bull calf; that the check in the amount of $33,000.00, payable to Bank and Benedix, was for the purchase of those cattle and release of Bank's mortgage on Benedix's collateral; and that Bank was entitled to receive the proceeds of the sale pursuant to the Plan. When the named cows were not delivered; the Plan revoked; and the sale rescinded; Bank, in equity and good conscience, should have returned the money to Lokey.

The *French Energy* case also answers the argument by Bank that it, as a stranger to the purchase agreement, could not be required to return the money.[4] In *French Energy,* part of the consideration for an oil and gas lease was paid to an attorney representing the lessor. The Oklahoma Supreme Court reversed summary judgment for the

---

2. Ten nonconforming cows were delivered. Lokey kept these cows and deducted their value from the amount he had paid. Consequently, he prayed for restitution in the amount of $22,-355.00 in his motion for summary judgment. Bank did not controvert the value assigned to the cows by Lokey.

3. 15 O.S.1991 § 29.

4. While Bank argues that it was a stranger to the purchase agreement, it clearly was not a stranger to the transaction. It was the secured party, it approved the Plan that authorized the sale, and it was a named payee on the purchase check. Its entitlement to receive the proceeds was dependent upon a completed, authorized sale.

lessor and attorney, and entered summary judgment for the lessee and required both the lessor and the attorney to repay the consideration received.

■ We find that summary judgment was properly entered in favor of Lokey.[5]

AFFIRMED.

HANSEN, P.J., and JOPLIN, J., concur.

---

5. "Whenever the law and facts so warrant, an equity decree may be affirmed if it is sustainable on any rational theory and the ultimate conclusion reached below is legally correct. Once invoked in a proper proceeding, equity will administer complete relief on all issues formed by the evidence regardless of whether the pleadings specifically tendered them for resolution." *Matter of Estate of Bartlett,* 680 P.2d 369, 374 (Okla. 1984).